[987 NYS2d 570]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v DORIAN RIVERA, Defendant.

Criminal Court of the City of New York, New York County, June 9, 2014

### APPEARANCES OF COUNSEL

*The Legal Aid Society* (*Stephen Pokart* of counsel) for defendant.

*Cyrus R. Vance, Jr., District Attorney* (*Andrew M. Stengel* of counsel), for plaintiff.

### OPINION OF THE COURT

STEVEN M. STATSINGER, J.

Defendant, charged with failure to disclose the origin of a recording in the second degree, in violation of Penal Law § 275.35 (count one), trademark counterfeiting in the third degree, in violation of Penal Law § 165.71 (count two), unlicensed general vendor, in violation of Administrative Code of the City of New York § 20-453 (count three) and failure to display a vendor's license, in violation of Administrative Code § 20-461 (a) (count four), moves for an order deeming counts one and two uncor-

roborated. For the reasons that follow, the court agrees. The case is accordingly adjourned for conversion.[1]

## I. Factual Background

### A. The Allegations

According to the misdemeanor complaint, on April 24, 2013, a New York City police officer saw the defendant displaying approximately 30 DVDs for sale; defendant remained close to the merchandise, never left it unattended, and showed it to a potential customer. He was not displaying a license issued by the Department of Consumer Affairs, and could not present one when the officer asked.

The officer confiscated the DVDs and examined them. An authorized representative of the Motion Pictures Association of America (the MPAA) later told the officer that the representative knew that the DVDs bore counterfeit versions of trademarks currently in use and registered to the Disney, Universal, Paramount and 20th Century Fox movie studios.

### B. Legal Proceedings

Defendant was arraigned on April 25, 2013, on a misdemeanor complaint charging him with failure to disclose the origin of a recording in the second degree, in violation of Penal Law § 275.35 (count one), trademark counterfeiting in the third degree, in violation of Penal Law § 165.71 (count two), unlicensed general vendor, in violation of Administrative Code § 20-453 (count three) and failure to display a vendor's license, in violation of Administrative Code § 20-461 (a) (count four). The People filed and served the supporting deposition of John Coghlan, an MPAA representative, and consented to the defendant's release. The court deemed the complaint converted, and adjourned the case to June 17 for trial.

On June 17, 2013, the People were not ready for trial and asked for June 21, although there was no prior statement of readiness. The court instead set a motion schedule, under which defense motions were due on July 15, and adjourned the case to August 1 for response and decision. Defendant filed the instant motion on June 26.

On August 1, 2013, the People filed and served their response to the motion in court, but defendant failed to appear. The court issued a bench warrant.

---

1. In deciding this motion, the court has considered defendant's motion papers, the People's opposition and the relevant statutes and cases.

Defendant was returned on the warrant involuntarily on March 8, 2014, the date he was arraigned on an unrelated domestic violence case. The arraignment court vacated the warrant, set bail and adjourned this case to Part D on March 13, the CPL 170.70 date for the new case. Unaware that there was an undecided motion pending, the arraignment court adjourned the case for trial and to join the domestic violence case.

By March 13, 2014, when defendant appeared in Part D, he had posted bail in both cases. The domestic violence matter remained unconverted, and the court adjourned that case to a post-CPL 30.30 date, June 9. When defense counsel pointed out that the instant motion had yet to be decided, the court adjourned this case to the same date for decision. The motion has accordingly been sub judice since March 13.

## II. Discussion

Defendant argues that counts one and two of the misdemeanor complaint were never converted because the supporting deposition of the MPAA representative contains hearsay. The court agrees; the case is accordingly adjourned for conversion.

### A. The Misdemeanor Complaint and Supporting Deposition

Resolution of this motion requires a close reading of both the misdemeanor complaint and the supporting deposition.

The misdemeanor complaint, sworn out by Police Officer Edward Salthouse, provides that, on or about April 24, 2013, at the southeast corner of Madison Avenue and East 132nd Street in New York County:

> "I observed the defendant standing next to a platform, on top of which were approximately 30 DVD's. The defendant was the only person who was uninterruptedly in immediate proximity to the merchandise and he never left the merchandise unattended during the entire period of my observation. I also observed the defendant showing the merchandise to an unidentified male and engaging in conversation with him.
>
> "The defendant was not displaying a license issued by the Department of Consumer Affairs and could not present one when asked.
>
> "I removed the DVD's from the platform and examined them to determine that they carry counterfeit trademarks that are indistinguishable from genuine Disney, Universal, Paramount and 20th Century Fox trademarks.

*"I am informed by John Coghlan, who is an autho-rized representative of the Motion Pictures Associa-tion of America, that* he has examined the DVD's recovered from the defendant and based on his ex-perience and formal training with MPAA, he knows that the trademarks they bear are counterfeit for the following reasons: (1) the DVDs recovered from the defendant were packaged in thin, flimsy pack-ages, whereas genuine Disney, Universal, Paramount and 20th Century Fox DVD's are packaged in hard, plastic cases; (2) the cover artwork on the recovered DVD's has a blurry and pixilated lettering and im-ages, as opposed to genuine products which have professionally printed cover artwork; (3) the recov-ered disks [sic] also have plain whi[t]e labels on top, whereas genuine DVDs have the film titles profes-sionally printed on the [t]op; and (4) the recovered DVD's are purple on the bottom, signifying that the disks [sic] are DVD-R disks [sic], whereas genuine DVDs are silver on the bottom, signifying that they are not in the DVD-R format.

*"I have examined the affidavit signed by Mr. Coghlan stating that* the Disney, Universal, Paramount and 20th Century Fox trademarks are currently in use and registered.

"I know that the recovered DVDs do not bear the names and addresses of the actual manufacturers because the recovered DVDs purport to be manufac-tured by Disney, Universal, Paramount and 20th Century Fox, companies that do not produce coun-terfeit DVDs." (Emphasis added.)

The pertinent portion of the supporting deposition of MPAA Representative John Coghlan is as follows:

*"I, John Coghlan, have spoken to Police Officer Salt-house of the New York City Police Department regarding Digital Video Discs (DVDs) seized from [defendant] on April 24, 2013.* I am confident that titles such as Lincoln (D) Croods (20th) G.I. Joe (P) Oblivion(U) do not clearly disclose the actual name and address of the manufacturer. The copy rights and/or exclusive distribution rights of such titles are owned by member companies of the MPAA, to wit (where applicable) Disney Pictures, Universal Picture, Paramount Pictures, 20th Century Fox members companies I represent.

"I base my conclusions upon my experience and formal training I have received as a member of the Motion Picture Association of America (MPAA). Specifically, the seized DVD's lack the indicia of legitimate digital videodisc such as original artwork; or a security label attached to the packaging.

"Additionally, the seized DVDs bear the traits of unauthorized discs, to wit:

"__x__ Discs are in DVD-R format as opposed to replicated

"__x__ Titles have not been released in DVD format

"__x__ Discs do not contain title

"__x__ Discs do not contain region code

"__x__ Discs do not contain studio logo

"__x__ Package artwork is photocopied

"__x__ Disc does not contain identifiable origination numbers (IFPI)." (Emphasis added.)

## B. The Misdemeanor Complaint is Unconverted

■■ Currently before the court is a misdemeanor complaint in which the arresting officer reports what the MPAA representative told him as to why he believes the DVDs the officer seized are counterfeit, and a supporting deposition from the MPAA representative that opines on those issues based on what the officer told him about the DVDs. Unless and until the People close these interlocking loops of hearsay, the misdemeanor complaint remains unconverted.

In order for a misdemeanor complaint to be converted to an information the factual portion of the instrument and any supporting depositions must contain "[n]on-hearsay allegations" that establish, "if true, every element of the crime charged and the defendant's commission thereof." (CPL 100.40 [1] [c]; *People v Alejandro*, 70 NY2d 133, 134-135 [1987].) However, the requirement that there be nonhearsay allegations in support of every element can be met where the allegation would be admissible under "some hearsay rule exception." (*People v Casey*, 95 NY2d 354, 361 [2000].)

Where a court concludes that the nonhearsay allegation requirement has not been met, the appropriate remedy is to permit the People to cure the defect, within the applicable CPL 30.30 time constraints. Thus, for example, in *People v Picado* (34 Misc 3d 660 [Crim Ct, Queens County 2011]), the defendant moved to dismiss a count of criminal contempt in the second degree, arguing that an affidavit of service that ostensibly

established defendant's knowledge of the order of protection, an element of the offense, was hearsay. The court agreed that the allegation that defendant was aware of the order remained "uncorroborated hearsay." (*Id.* at 663.) The court accordingly adjourned the case to give the People "[an opportunity] to cure the defect in the criminal contempt charge" via supporting deposition within the remaining speedy trial time. (*Id.* at 666.)

Here, likewise, the court is unable to conclude the nonhearsay allegation requirement is met. Penal Law § 275.35 has as an element the requirement that the People prove that the defendant offered for sale a recording that "does not clearly and conspicuously disclose the actual name and address of the manufacturer." In cases where recordings are alleged to be counterfeit, this element can be made out by evidence that the recording displayed a manufacturer's name and address other than that of the counterfeiter. But this, of course, would turn on a nonhearsay allegation that the recordings are indeed counterfeit. Similarly Penal Law § 165.71 requires that the People prove that the defendant "manufacture[d], distribute[d], s[old], or offer[ed] for sale goods which bear a counterfeit trademark." This offense requires a nonhearsay allegation that the trademark is indeed counterfeit.

The court is unable to conclude that the nonhearsay allegation element is satisfied as to either the allegation that the recordings themselves or their trademarks are counterfeit. The arresting officer's conclusion that the recordings and trademarks are counterfeit and that, as a result, the discs do not display their manufacturer's name and address is based solely on the fact that "he is informed by" the MPAA representative that the recordings and marks are counterfeit. This is hearsay of the rankest order, and falls within no known hearsay exception.

Confoundingly, however, the MPAA representative's determination that the DVDs and trademarks are in fact counterfeit is not based on his own examination of the discs; it is based on what the arresting officer told him about the DVDs. This is also hearsay that is not covered by any exception. Even though it is true that an expert witness may in some circumstances rely on hearsay in formulating his opinion (*People v Goldstein*, 6 NY3d 119 [2005]), those circumstances are not properly pleaded here. First, there is an insufficient basis for concluding that the MPAA representative is an expert witness at all. Neither the misdemeanor complaint nor the supporting deposition alleges facts from which it can be concluded that the MPAA representative was "possessed of the requisite skill, training, education, knowl-

edge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable." (*Matott v Ward*, 48 NY2d 455, 459 [1979].) In addition, there are no facts pleaded to indicate that the particular type of hearsay the MPAA representative relied on—a police officer's description of seized evidence—"is of a kind accepted in the profession as reliable in forming a professional opinion." (*Goldstein*, 6 NY3d at 124.)

In short, what is missing here, and what is needed to go forward, is a first-party accusatory instrument or corroborating affidavit sworn out by someone who *both* examined the discs *and* who can himself assert that, based on his training and experience, the recordings and trademarks are counterfeit. *People v Kalin* (12 NY3d 225, 231-232 [2009]) found the nonhearsay requirement satisfied in a heroin case where the instrument was sworn out by the police officer who seized the heroin that

> "state[d] the officer's familiarity with and training regarding the identification of the drug, provide[d] some information as to why the officer concluded that the substance was a particular type of illegal drug, and supplie[d] sufficient notice of the charged crime to satisfy the demands of due process and double jeopardy."

But it is abundantly clear that *Kalin* would have come out differently if the instrument indicated that the officer who swore that his training and experience led him to believe that the substance was heroin was based on a third-party's description of the substance, where the swearing officer himself had never examined it. The same is true here, and accordingly, the court finds that the misdemeanor complaint remains unconverted.

The court recognizes that another Criminal Court has apparently held otherwise. In *People v Chen Lu* (25 Misc 3d 299 [Crim Ct, Richmond County 2009]), the court, writing in the context of a CPL 30.30 motion, found no hearsay defect in a similarly structured accusatory instrument, where the arresting officer described DVDs to an MPAA representative, and the MPAA representative based his conclusion that they were counterfeit on the information the officer conveyed to him. Nevertheless, for the reasons that follow, the court declines to follow *Chen Lu*.[2]

---

2. The court also respectfully rejects the People's position that there is merely a "disagreement" between the misdemeanor complaint and the supporting deposition that does not affect conversion.

First, there is a significant difference between the two cases. In *Chen Lu*, the complaint contained language describing the arresting officer's own "prior experience in making arrests for counterfeit DVDs in order to determine that the said disks were not official copies of the movies and were still being shown in the movie theaters and not available for distribution to the public." (25 Misc 3d at 302.) That language, which would at least partially cure a hearsay defect, is absent from the misdemeanor complaint here.

Additionally, *Chen Lu* turned on the court's view that the supporting deposition was properly based on the MPAA representative's " 'information and belief' " (*id.* at 303-304); specifically, that, based on the information the police officer furnished to him, the representative believed that the DVDs were counterfeit. It is true that a supporting deposition can be based on information and belief (CPL 100.20), and that information and belief is indistinguishable from hearsay. (*See* Black's Law Dictionary [9th ed 2009] [a statement made on "information and belief" is one that is "based on secondhand information that the declarant believes to be true"].) But it is decidedly not true that the permissibility of "information and belief" in a supporting deposition trumps the core jurisdictional requirement of CPL 100.40 (1) (c) that, for an information to be "sufficient on its face," it must contain "[n]on-hearsay allegations [in] the factual part of the information and/or of any supporting depositions [that] establish, if true, every element of the offense charged and the defendant's commission thereof." (*See also* CPL 100.15 [3] ["in order for an information or a count thereof to be sufficient on its face, every element of the offense charged and the defendant's commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions"].)

In the case at bar, the supporting deposition reasonably makes out the MPAA's "information and belief"—information furnished by the arresting officer has led the representative to the belief that the DVDs are counterfeit. But this does not cure the hearsay defect.

Accordingly the court concludes that the instrument here remains an unconverted misdemeanor complaint as to counts one and two; the instrument itself contains hearsay as does the supporting deposition that was filed in support of it. The case

should accordingly be adjourned for conversion, subject to the usual CPL 30.30 time parameters.

### III. Conclusion

For the foregoing reasons, this matter is adjourned for conversion.